## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: _____

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THIRD FRIDAY MANAGEMENT, LLC and** | ) |
| **MICHAEL E. LEWITT,** | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND
### DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## I.   INTRODUCTION

1.      The Commission brings this enforcement action against Third Friday Management, LLC ("Third Friday"), a previously registered investment adviser, and Third Friday's sole managing member and majority owner, Michael E. Lewitt ("Lewitt") (collectively, "Defendants"), for their fraudulent conduct and gross breaches of fiduciary duties to their fund client, the Third Friday Total Return Fund, L.P. (the "Fund"), and the Fund's investors.

2.      Since at least 2012, the Fund was marketed to investors as "investing exclusively in S&P 500 index options which have full liquidity."  The Fund's PPM further elaborated the Fund's "strategy of selling straddles on the S&P 500 Index over a portfolio of income generating securities."  However, beginning in or around January 2018 through March 2020 (the "relevant period"), Third Friday and Lewitt suddenly changed course without disclosing the new investment strategy to Fund investors, many of whom are senior citizens.  In direct contravention of the Fund's

prohibition against illiquid investments, Defendants made 45 separate loan advances totaling more than $19 million to a distressed company that acquired and operated struggling rural hospitals and filed for Chapter 11 bankruptcy in December 2019 (the "Bankrupt Entity").  These investments totaled nearly two-thirds of the Fund's assets.

3.      In addition, Lewitt failed to disclose to the Fund's investors that he had a financial interest and partnership with a group of private affiliated companies that invested in distressed health care companies which had committed to investing $30 million to the Bankrupt Entity, and that he used Fund assets to make bridge loans to the Bankrupt Entity and other healthcare companies.  He further failed to disclose that the Bankrupt Entity paid his affiliated group of companies 3% "broker fees" in connection with the undisclosed bridge loans the Fund made to the Bankrupt Entity, totaling over $450,000.

4.      Lewitt, with sole authority of the Fund, also misappropriated at least $4.7 million of investor funds for his personal use, including over $900,000 to pay a personal IRS tax lien.

5.      By engaging in this conduct, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2)]; Third Friday violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rules 206(4)-2 and 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-2 and 17 C.F.R. § 275.206(4)-8], and Lewitt aided and abetted Third Friday's violations of Section 206(4) of the Advisers Act and Rules 206(4)-2 and 206(4)-8 thereunder.

6.      Unless enjoined, Defendants are reasonably likely to continue to violate the federal securities laws.

II.     **DEFENDANTS**

7.      **Third Friday** is a Delaware limited liability company formed in 2007 with its principal place of business in Delray Beach, Florida.  Third Friday was previously registered with the Commission as an investment adviser until January 6, 2020, when it filed a Form ADV-W withdrawing from registration and is currently inactive.  Third Friday provided investment management services and served as the investment adviser to the Fund.  According to its last filed Form ADV dated March 15, 2019, Third Friday had approximately $32 million in assets under management.

8.      **Lewitt**, age 65, is a resident of Boca Raton, Florida.  Since 2012, Lewitt has been Third Friday's sole managing member, majority owner (over 90%), and the Fund's portfolio manager.  Lewitt exercised control over all investment decisions made for the Fund.  He has over 30 years of securities industry and investment management experience.  Lewitt is also a licensed attorney admitted in New York State since 1986.

III.    **RELEVANT ENTITIES**

9.      **The Fund** is a Delaware limited partnership formed in 2007 with its principal place of business in Delray Beach, Florida.  Third Friday serves as the investment adviser to the Fund. The Fund had approximately 60 investors during the relevant period.

10.     **Third Friday GP, LLC** ("Third Friday GP"), is a Delaware limited liability company formed in 2007 with its principal place of business in Delray Beach, Florida.  Third Friday GP served as the Fund's general partner during the relevant period.

11.     **Platinum Global Health Partners, LLC** ("Platinum Global"), is a Florida limited liability company formed in 2019 with is principal place of business in Delray Beach, Florida. Platinum Global shares the same business address as Third Friday and has been inactive since

2021.  Lewitt was the sole manager of Platinum Global during the relevant period and had a financial interest and partnership with a group of private, affiliated companies (collectively, "Platinum") that invested in distressed health care companies.

## IV.    JURISDICTION AND VENUE

12.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e) and 78aa], Sections 209(d), 209(e), and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14], and 28 U.S.C. § 1331.

13.    This Court has personal jurisdiction over Defendants and venue is proper in this district because many of Defendants' actions and transactions constituting violations of the Securities Act, Exchange Act, and Advisers Act occurred in this District.  Lewitt resides in this District, and Third Friday's principal place of business is in this District.

14.    In connection with the conduct alleged in this Complaint, Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## V.    FACTS

### A.    Defendants' Role as Advisers to the Fund

15.    In 2012, Defendants were brought in by the Fund's then sole manager, an SEC-registered investment adviser, to take over the investment management responsibilities of the Fund (the "Consultant").  At that time, the Fund was a small private fund with about $2 million in investments.

16.    Lewitt exercised control and decision-making authority for Third Friday, the investment adviser of the Fund, and for Third Friday GP, which served as the Fund's general

partner.  Through Third Friday and Third Friday GP, Lewitt carried out the Fund's day-to-day operations, including managing and investing the Fund's assets.  Lewitt also had sole control over the Fund's bank account.

17.    Immediately after acquiring the Fund, Defendants opened the Fund to outside investors, who were offered the opportunity to participate and invest by becoming limited partners of the Fund.  The Fund's investors consisted primarily of retail investors, including many senior investors, who were personally recruited by Lewitt through social relationships and word of mouth.

18.    Third Friday charged a 1% annual management fee based on the Fund's total assets under management.  Third Friday GP was also entitled to an annual performance fee totaling 15% of the aggregate net increase in each Limited Partner's capital account.

**B.    The Fund's Investment Strategy**

19.    Since at least 2012, Defendants marketed the Fund as an options strategy fund.  For example, in September 2017, Defendants prepared a marketing presentation document (the "Marketing Presentation") they provided to investors and prospective investors in 2017 and 2018 (revised in February 2018).  The Marketing Presentation represented to investors and prospective investors that:

- the "Fund invests exclusively in S&P 500 index options which have full liquidity;"

- the Fund maintains at "least 30% of the Fund generally held in cash/short term Treasuries at all times;" and

- "[c]ollateral is invested in a diversified portfolio of income generating securities to generate additional income to increase overall returns."

20.     Defendants further represented in the Marketing Presentation that "[s]trong risk management is essential to the overall success of the Fund and preservation of capital is the paramount concern."

21.     In the Fund's Private Placement Memorandum ("PPM), Third Friday represented to investors that its investment objective and strategy for the Fund was to "sell straddles on the S&P 500," described as "an option strategy whereby the Partnership will simultaneously sell put and call options on the S&P."

22.     The PPM states that the Fund will also "invest in certain income-generating assets" such as "U.S. Treasury bills, municipal bonds, government and corporate bonds, and other similar instruments," to help generate income and support the Fund's straddle strategy:

> The Securities which the Partnership will purchase are income-generating assets, such as U.S. Treasury bills, municipal bonds, government and corporate bonds, and other similar instruments. The Securities will be purchased to satisfy the margin requirements needed for the option positions and are intended to generate interest income for the Partnership. The Securities perform independently and separately from the options trading while satisfying the margin requirements needed for the straddle strategy.

23.     The PPM explains that the Fund's objective is to generate profits in three ways: (i) through the closing of open straddles; (2) through premiums received when closing straddles, which would generate interest in a money market account; and (3) the investments in income-generating assets.  The PPM expressly prohibits investments in illiquid assets: "Notwithstanding anything to the contrary contained herein, the Partnership will not invest in illiquid assets."

24.     Between 2012 and approximately 2016, much of the Fund's options trading strategy was managed by the Consultant, an outside consultant and registered representative at a registered broker-dealer with experience trading options.   When the Consultant ceased his consulting relationship on behalf of the Fund, Lewitt started handling the Fund's options trading.

25.     After Lewitt started handling the options trading strategy on his own, the Fund performed poorly and suffered losses.  This prompted sizeable investor withdrawals from the Fund due to poor performance.  By 2019, Defendants were unable to meet investor redemption requests because the Fund ran out of liquid assets.  Redemption requests in excess of $20 million from the remaining limited partners have yet to be satisfied.

**C.     Shift in Fund Strategy and Lewitt's Undisclosed Conflict of Interest**

26.     During the same period Lewitt was majority shareholder and sole managing member of Third Friday and Third Friday GP, he was also sole manager of Platinum Global and had a financial interest in Platinum.  Platinum invested in distressed health care companies, including the Bankrupt Entity.

27.     In early 2018, Lewitt abandoned the Fund's options trading strategy and began investing the Fund's assets with the Bankrupt Entity to further Platinum's – and his own -- interests.  Specifically, Lewitt and Platinum had committed to provide $30 million in financing to the Bankrupt Entity, a distressed company that acquired and operated struggling rural hospitals.  At that time, the Bankrupt Entity was insolvent and in dire need of bridge financing pending Platinum's investment.

28.     Without informing the Fund's limited partners, and contrary to disclosures in the Fund's PPM, Lewitt used the Fund's assets to make a series of bridge loans to the Bankrupt Entity to keep it afloat.

29.     In January 2018, Lewitt used the Fund's assets to make an initial $2 million loan to the Bankrupt Entity.  Lewitt continued to make loans to the Bankrupt Entity for almost two years using the Fund's assets.  By November 2019, Lewitt had made 45 separate loans totaling more than $19 million to the Bankrupt Entity, which constituted the majority of the Fund's capital.

30.     As part of the agreement for receiving the loans, the Bankrupt Entity was required to pay Platinum "broker fees" of 3% on the Fund's loans, which totaled more than $450,000.  As owner and sole manager of Platinum Global, Lewitt was a beneficiary of the "broker fees" paid by the Bankrupt Entity to obtain the bridge loans funded with the Fund's assets.

31.     In addition to the loans to the Bankrupt Entity, Lewitt used approximately $1 million of the Fund's assets to make loans to other distressed healthcare companies.

32.     Defendants never disclosed Lewitt's affiliation with Platinum to the Fund's limited partners or prospective investors, either in the Fund's PPM or otherwise.  Nor did Defendants disclose that Lewitt shifted the Fund's investment strategy, or that Lewitt would use the Fund's assets to make investments to further Platinum's interests.

**D.     Defendants' Material Misrepresentations and Omissions to Investors**

33.     Defendants made numerous misrepresentations and omissions to investors about the Fund's investment strategy in the Marketing Presentation and the PPM, and other communications to investors and prospective investors about, among other things, the change in the Fund's investment strategy, the performance and profitability of the Fund, the use of the Fund's assets, Lewitt's affiliation with Platinum and his conflicts of interests.

*(i)     Misrepresentations and Omissions About the Fund's Investment Strategy and Investments*

34.     Defendants represented to investors and prospective investors that the Fund would invest in S&P 500 index options with full liquidity.  In its Marketing Presentation, Defendants further assured investors that it would maintain "at least 30% of the Fund generally held in cash/short term Treasuries at all times."  And in the Fund's PPM, Defendants told investors and prospective investors that the Fund would generate additional income through investments in "U.S.

Treasury bills, municipal bonds, government and corporate bonds, and other similar instruments." Importantly, the PPM also assured investors that the Fund would not invest in illiquid assets.

35.     Contrary to these representations, in January 2018 Defendants shifted the Fund's investment strategy, using most of the Fund's assets to provide bridge loans to the Bankrupt Entity while that company was in financial distress.

36.     Defendants did not disclose this material change of investment strategy to investors. To the contrary, Defendants deceived investors by sending letter and email "updates" falsely telling investors that the Fund was performing well under its straddle options investment strategy.

37.     For example, on April 16, 2018, Defendants sent investors an investor update that the Fund is "sticking with the discipline that served the Fund so well for the last decade." However, by mid-April 2018, Lewitt had already dramatically shifted the Fund's investment strategy by making loans totaling $7.9 million of $41 million in total Fund assets, to the Bankrupt Entity.

38.     Similarly, in a June 16, 2018 investor update, Defendants falsely reiterated that "[t]he key to our strategy is consistently selling straddles and collecting the premiums and hedging those positions" and that "the options strategy is doing fine and will generate profits over the rest of the year." In fact, by early June 2018, the Fund had made $12.4 million in loans to the Bankrupt Entity. However, Defendants made no mention of the Bankrupt Entity loans.

39.     Further, in the June 16, 2018 update, Lewitt told investors that Defendants had raised "significant new capital" from Middle Eastern "institutional investors," more than the existing amount managed by the Fund that would be contributed to the Fund "in the coming months and years." This statement was false. No purported Middle Eastern institutional investors invested in the Fund.

40.     In correspondence to investors dated October 18, 2018, Lewitt reiterated that the Fund's "options are performing well" and the "strategy has proven time and again over the last two decades that it generates consistent positive returns regardless of market conditions." However, by early October 2018, the Fund increased its substantial investment in the Bankrupt Entity with loans totaling $15.3 million, while its options strategy was virtually dormant.

41.     Defendants did not disclose in any of these investor updates that Third Friday had shifted its investment strategy, and that a significant portion of the Fund's assets were invested in illiquid investments, specifically, a series of bridge loans to a distressed health care company. Defendants knew that the Fund's investment strategy did not contemplate investing in distressed debt, making loans to distressed companies, or making highly illiquid investments.  Indeed, the PPM, by its stated terms, expressly prohibited investments in illiquid assets.

42.     Lewitt's misrepresentations continued in a February 2, 2019 investor update as he wrote, "[w]e are not changing strategy …," and continued to promote the Fund's options investment strategy.  For the first time, Lewitt made vague references to the Fund's "collateral investments" and "short-term loans," without providing any specific details of the loans to the Bankrupt Entity which, by that time, totaled close to $20 million, nearly two-thirds of the Fund's assets of $29.5 million.

43.     Although Lewitt in 2018 brought back the Consultant who had since left the registered broker-dealer, the Fund's investments in the Bankrupt Entity and sizeable redemption requests restricted the implementation of any meaningful options trading.

                    (ii)      *Material Omissions About Lewitt's Conflict of Interests*

44.     As sole manager of Platinum Global, Lewitt had a financial interest in Platinum Global and its affiliated companies.  The Bankrupt Entity (and the other companies that obtained

bridge loans from the Fund) paid Platinum broker fees of 3% in connection with bridge loans that were extended by the Fund.  As such, Lewitt had conflicts of interest that should have been disclosed to the Fund's limited partners.  Indeed, as an investment adviser, Lewitt had a fiduciary duty to the Fund's investors.

45.     Notwithstanding his fiduciary duty, Lewitt failed to disclose to investors his affiliation with Platinum, or the fact that he financially benefitted by investing the Fund's assets into the Bankrupt Entity.

46.     Lewitt also failed to disclose that Platinum earned more than $450,000 in broker fees, while the Fund's assets were depleted through dozens of undisclosed bridge loans to the Bankrupt Entity.

### (iii)     *Material Misrepresentations About Bankrupt Entity's Insolvency*

47.     In December 2019, the Bankrupt Entity filed for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States District Court for the Eastern District of Kentucky.  By the time the Bankrupt Entity filed for bankruptcy, the Fund had loaned close to $20 million to the Bankrupt Entity, making the Fund the largest investor in this insolvent company.

48.     Yet Defendants did not disclose to the Fund's investors the existence of the Fund's loans to the Bankrupt Entity until March 24, 2020, approximately three months after the company had filed for bankruptcy.  On that date, Lewitt sent an investor update that, for the first time, disclosed the Fund's loans to the Bankrupt Entity.

49.     When he finally disclosed the bridge loan investments, Lewitt lied to investors, telling them that "the Bankrupt Entity has been an extremely profitable investment for the Fund." In reality, the Fund had not received any return of principal and only minimal interest payments from the Bankrupt Entity.

50.     In addition, in the March 24, 2020 correspondence, Lewitt represented to investors in the Fund that the Bankrupt Entity "was not (and is not) insolvent."

51.     However, that statement was false.  In a February 7, 2020 affidavit Lewitt filed in the Bankrupt Entity's bankruptcy, prior to the March 2020 correspondence to Fund investors, Lewitt conceded that it became apparent to him in late 2018 that the Bankrupt Entity would be unable to repay or refinance its loans to the Fund when due.

52.     Moreover, although Lewitt knew by late 2018 that the Bankrupt Entity would be unable to repay or refinance its loans to the Fund, Lewitt continued making bridge loans to the Bankrupt Entity throughout 2019.

**E.     Lewitt Misappropriated $4.7 Million from the Fund for His Personal Use and Overcharged the Fund on Overvalued Assets**

53.     During the relevant period, Lewitt – who had sole control over the bank accounts for the Fund and Third Friday – misappropriated at least $4.7 million from the Fund.

54.     In April 2019, Lewitt directed the Fund to make a purported $960,000 loan to the Bankrupt Entity.  Almost immediately after the funds were wired, Lewitt directed the Bankrupt Entity's CEO to wire $950,000 to Lewitt's own personal bank account, explaining that he needed the funds to satisfy a personal IRS tax lien.  The Bankrupt Entity's CEO complied and Lewitt promptly transferred the funds to satisfy a long-pending personal IRS tax lien totaling roughly the same amount.

55.     In another example, in or around 2019, Lewitt caused the Fund to make a $1.3 million purported loan to one of his affiliates, Platinum Group USA, Inc. ("Platinum Group"). Thereafter, on December 31, 2018, Platinum Group wired $580,000 to Lewitt's own personal bank account, for unexplained reasons.

56.     Lewitt also misappropriated moneys from the Fund by fraudulently taking advanced management fees and performance fees on Fund assets which he had materially overvalued.  For example, in 2019, Lewitt valued a $2.7 million investment in unidentified "private investment companies" at $7.9 million, a $5.2 million increase over a brief period of time.  The Fund's unaudited financial statement for 2018 did not reflect these investments, which appeared for the first time on the Fund's unaudited financial statement for 2019.

57.     There is no evidence to support the $5.2 million increase in value to the "private investment companies" investments listed in the 2019 unaudited financial statement.  Moreover, this purported investment gain alone accounted for most of the Fund's stated gain for the year, which Lewitt relied on to allocate himself a management fee of approximately $900,000.

**F.     Third Friday Violated, and Lewitt Aided and Abetted, Third Friday's Violations of the Custody Rule and Misrepresented that Investors Would Receive Audited Financial Statements**

58.     Under Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2], if a registered investment adviser has custody of client funds or securities, those assets must be verified through a surprise examination by an independent public accountant at least once per year (the "Custody Rule").

59.     The Custody Rule further provides that for limited partnerships, LLCs, and other pooled investment vehicles subject to audit, the adviser "shall be deemed to have complied with" the surprise examination requirement if, among other things, the adviser "distributes [the fund's] audited financial statements prepared in accordance with [GAAP] to all . . . members . . . within 120 days of the end of its fiscal year."  The audit must be performed by an independent public accountant that is registered with, and subject to regular inspection by, the Public Company Accounting Oversight Board ("PCAOB").

60.     Third Friday was subject to the Custody Rule because it maintained custody of the Fund's cash and assets.  Third Friday violated the Custody Rule because it failed to have surprise examinations or to distribute audited financial statements.

61.     With respect to audits of the Fund, Defendants represented to Fund investors in the PPM, as required under the Custody Rule, that they would receive annual reports with audited financial statements issued from independent certified public accountants.

62.     Despite these representations and the Custody Rule's requirements, for fiscal years 2018 and 2019, Third Friday failed to (i) obtain and distribute the Fund's audited financial statements prepared by an independent public accountant subject to regular inspection by the PCAOB or (ii) retain an independent public accountant to conduct an annual surprise examination to verify the Fund's assets.

63.     As Third Friday's sole managing member, majority owner, and the Fund's sole portfolio manager, Lewitt knew of Third Friday's obligations under the Custody Rule and was responsible for Third Friday's compliance with the Custody Rule.

## VI.     CLAIMS FOR RELIEF

### COUNT I

### Violations of Section 17(a)(1) of the Securities Act

**(Against Defendants Third Friday and Lewitt)**

64.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

65.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly employed devices, schemes, or artifices to defraud.

66.     By reason of the foregoing, Defendants Third Friday and Lewitt, directly and indirectly, violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Section 17(a)(2) of the Securities Act

**(Against Defendants Third Friday and Lewitt)**

67.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

68.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

69.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)].

## COUNT III

### Violations of Section 17(a)(3) of the Securities Act

**(Against Defendants Third Friday and Lewitt)**

70.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

71.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, in the offer or sale of securities, by use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, negligently

engaged in transactions, practices, or courses of business which have operated, are now operating or will operate as a fraud or deceit upon the purchasers.

72.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act [15 U.S.C. § 77q(a)(3)].

## COUNT IV

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act

**(Against Defendants Third Friday and Lewitt)**

73.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

74.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly employed devices, schemes or artifices to defraud in connection with the purchase or sale of any security.

75.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(a) [17 C.F.R. § 240.10b-5(a)].

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act

**(Against Defendants Third Friday and Lewitt)**

76.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

77.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly made untrue statements of material facts or omitted to

state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in connection with the purchase or sale of any security.

78.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(b) [17 C.F.R. § 240.10b-5(b)].

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act

**(Against Defendants Third Friday and Lewitt)**

79.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

80.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, knowingly or recklessly engaged in acts, practices, and courses of business which have operated, are now operating or will operate as a fraud upon any person in connection with the purchase or sale of any security.

81.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5(c) [17 C.F.R. § 240.10b-5(c)].

## COUNT VII

### Violations of Section 206(1) of the Advisers Act

**(Against Defendants Third Friday and Lewitt)**

82.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

83.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, for compensation, engaged in the business of directly advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.  Defendants Third Friday and Lewitt were therefore "investment advisers" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)].

84.     Defendants Third Friday and Lewitt, by use of the mails or any means or instrumentality of interstate commerce, directly, or indirectly knowingly or recklessly employed a device, scheme, or artifice to defraud one or more clients or prospective clients.

85.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(1) of the Advisers Act [15 U.S.C. § 80b-6(1)].

## COUNT VIII

### Violations of Section 206(2) of the Advisers Act

**(Against Defendants Third Friday and Lewitt)**

86.     The Commission repeats and realleges paragraphs 1 through 63 and 83 of this Complaint.

87.     Since at least January 2018 through March 2020, Defendants Third Friday and Lewitt, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly, negligently engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon one or more clients or prospective clients.

88.     By reason of the foregoing, Defendants Third Friday and Lewitt violated and, unless enjoined, are reasonably likely to continue to violate, Section 206(2) of the Advisers Act [15 U.S.C. § 80b-6(2)].

## COUNT IX

### Violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act

### (Against Defendant Third Friday)

89.     The Commission repeats and realleges paragraphs 1 through 63 of this Complaint.

90.     Since at least January 2018 through March 2020, Defendant Third Friday acted as an investment adviser to the Fund, which is a pooled investment vehicle as defined in Rule 206(4)-8(b) of the Advisers Act [17 C.F.R. § 275.206(4)-8(b)].

91.     Defendant Third Friday, while acting as an investment adviser to a pooled investment vehicle, by use of the mails or means or instrumentalities of interstate commerce, directly or indirectly, negligently: (a) made untrue statements of material fact and omitted to state material facts necessary to make statements made, in the light of the circumstances under which they were made, not misleading, to investors and prospective investors in a pooled investment vehicle; and (b) otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in a pooled investment vehicle.

92.     By reason of the foregoing, Defendant Third Friday violated, and unless enjoined, is reasonably likely to continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 780b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT X

### Aiding and Abetting Violations of Section 206(4) and Rule 206(4)-8 of the Advisers Act

### (Against Defendant Lewitt)

93.     The Commission repeats and realleges paragraphs 1 through 63 and 90 of this Complaint.

94.     Since at least January 2018 through March 2020, Defendant Third Friday, while acting as an investment adviser to one or more pooled investment vehicles, by use of the mails or means or instrumentalities of interstate commerce, directly or indirectly, negligently: (a) made untrue statements of material fact and omitted to state material facts necessary to make statements made, in the light of the circumstances under which they were made, not misleading, to investors and prospective investors in a pooled investment vehicle; and (b) otherwise engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors and prospective investors in a pooled investment vehicle.

95.     Defendant Lewitt knowingly or recklessly provided substantial assistance to Defendant Third Friday in its violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

96.     By reason of the foregoing, Defendant Lewitt aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT XI

### Violations of Section 206(4) and Rule 206(4)-2 of the Advisers Act

### (Against Defendant Third Friday)

97.     The Commission repeats and realleges paragraphs 1 through 63 and 83 of this Complaint.

98.     Since at least January 2018 through March 2020, Defendant Third Friday, an investment adviser registered with the Commission at all relevant times, had custody of the Fund's assets under the definition set forth in Rule 206(4)-2(d)(2) [17 C.F.R. § 275.206(4)-2(d)(2)].

99.     For fiscal years 2018 and 2019, Defendant Third Friday (a) failed to obtain an annual audit of the Fund by an independent public accountant registered with and subject to regular inspection by the PCAOB, (b) failed to obtain a surprise examination of the Fund by an independent public accountant, and (c) failed to distribute audited financial statements to Fund investors within 120 days of the end of the Fund's fiscal years.

100.    By reason of the foregoing, Defendant Third Friday, violated and, unless enjoined, is reasonably likely to continue to violate, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2].

## COUNT XII

### Aiding and Abetting Violations of Section 206(4) and Rule 206(4)-2 of the Advisers Act

### (Against Defendant Lewitt)

101.    The Commission repeats and realleges paragraphs 1 through 63 and 83 of this Complaint.

102.    Defendant Third Friday, an investment adviser registered with the Commission at all relevant times, had custody of the Fund's assets under the definition set forth in Rule 206(4)-2(d)(2) [17 C.F.R. § 275.206(4)-2(d)(2)].

103.    For fiscal years 2018 and 2019, Defendant Third Friday (a) failed to obtain an annual audit of the Fund by an independent public accountant registered with and subject to regular inspection by the PCAOB, (b) failed to obtain a surprise examination of the Fund by an independent public accountant, and (c) failed to distribute audited financial statements to Fund investors within 120 days of the end of the Fund's fiscal years.

104.   Defendant Lewitt knowingly or recklessly provided substantial assistance to Defendant Third Friday in its violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2].

105.   By reason of the foregoing, Defendant Lewitt aided and abetted and, unless enjoined, is reasonably likely to continue to aid and abet violations of Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-2 thereunder [17 C.F.R. § 275.206(4)-2].

## VII.   **RELIEF REQUESTED**

### A.   **Permanent Injunction**

Issue Permanent Injunctions, enjoining Defendants Third Friday and Lewitt from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1), (2)], and with respect to Defendant Third Friday, Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rules 206(4)-2 and 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-2 and 17 C.F.R. § 275.206(4)-8], and with respect to Defendant Lewitt, aiding and abetting Defendant Third Friday's violation of Section 206(4) of the Advisers Act and Rules 206(4)-2 and 206(4)-8 thereunder.

### B.   **Conduct-Based Injunction**

Issue a permanent conduct-based injunction against Defendant Lewitt prohibiting Defendant Lewitt from, directly or indirectly, including, but not limited to, through any entity he owns or controls (1) participating in the issuance, purchase, offer, or sale of any security provided, however, that such injunction shall not prevent Defendant Lewitt from purchasing or selling securities for his own personal account and (2) exercising control over any commercial enterprise or project that issues, purchases or sells securities to any person other than Defendant Lewitt.

## C. <u>Disgorgement</u>

Issue an Order directing Defendants Third Friday and Lewitt to disgorge all ill-gotten gains, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

## D. <u>Civil Penalty</u>

Issue an Order directing Defendants Third Friday and Lewitt to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. § 78(d)] and Section 209(e) of the Advisers Act [15 U.S.C.§ 80b-9(e)].

## E. <u>Officer and Director Bar</u>

Issue an Order, pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)], and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], barring Defendant Lewitt from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## F. <u>Further Relief</u>

Grant such other and further relief as may be necessary and appropriate.

## G. <u>Retention of Jurisdiction</u>

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VIII.  **<u>DEMAND FOR JURY TRIAL</u>**

The Commission hereby demands a trial by jury on any and all issues in this action so triable.


Dated:  September 29, 2023                              Respectfully submitted,

                                        By:     <u>s/Pascale Guerrier</u>
                                                Pascale Guerrier
                                                Trial Counsel
                                                Florida Bar Number:  22590
                                                E-mail: <u>guerrierp@sec.gov</u>
                                                Direct Telephone: (305) 982-6301
                                                Attorney for Plaintiff
                                                **Securities and Exchange Commission**
                                                801 Brickell Avenue, Suite 1950
                                                Miami, FL 33131


Of counsel:
Steven J. Meiner, Esq.
Senior Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, Florida 33131
Direct Telephone: (305) 982-6336
E-mail: meiners@sec.gov